JOSEPH BAKER *vs.* CITY OF FALL RIVER.

Bristol.     October 25, 1904. — November 22, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Way*, Laying out of highway, defect in highway. *Automobile. Negligence*, On highway. *Law of the Road.*

Where the records of a city show that a report of the mayor and aldermen, that the common convenience and necessity require the laying out of a certain street, was accepted and approved by the board of aldermen, and that the report

then was accepted by the common council, and that the board of aldermen concurred with the council in accepting the report, this shows a laying out of the street in accordance with law.

*Semble*, that an automobile is a carriage within the meaning of the highway act, R. L. c. 51, § 1.

A person is not precluded from recovering under the highway act, R. L. c. 51, for injuries from a defect in a highway dangerous to travellers in ordinary vehicles because when injured he was travelling in an automobile.

In an action against a city for injuries from an alleged defect in a highway, consisting of a rope stretched across from a stake at the side of a sewer trench in the middle of the street to a telegraph pole in the sidewalk, on the right hand side as the plaintiff was approaching in an automobile and at the farther end of the trench from the plaintiff, the defendant contended that the plaintiff was negligent in choosing the narrower opening to the right rather than the wider one at the left. There was no other vehicle in the immediate vicinity at the time. The judge instructed the jury that in considering the question of the plaintiff's due care they might have in mind the provisions of R. L. c. 54, § 1, commonly known as the law of the road. *Held*, that this instruction was right; that, although there was no other vehicle in sight and the plaintiff might have turned to the left without disobeying the statute, it was plain that other vehicles might approach and if so it would be the plaintiff's duty to keep to the right of the trench, and that the requirement of the statute was material, both upon the question of the plaintiff's due care in attempting to travel where he did, and upon the question whether there was a defect caused by negligence in obstructing one entire half of the travelled path.

In an action against a city for injuries from an alleged defect in a highway, consisting of a rope stretched across from a stake at the side of a sewer trench in the middle of the street to a telegraph pole in the sidewalk on the right hand side as the plaintiff was approaching in an automobile and at the farther end of the trench from the plaintiff, it appeared, that the plaintiff in attempting to pass to the right of the trench was struck by the rope, which he did not see until within two or three feet of it, and that he then tried to stop the machine and its speed was diminished when he struck the rope, that the rope was of a color not easily distinguishable and that no flag or other means of attracting attention to the presence of the rope was used. There was evidence that the plaintiff was proceeding slowly and carefully. *Held*, that on this evidence, with other evidence tending to show how long the obstructions had been in place and their nature and location, the questions whether there was a defect in the highway and whether the plaintiff was in the exercise of due care were for the jury.

TORT, by one injured while travelling in an automobile; by an alleged defect in Bedford Street in Fall River, consisting of a rope stretched across one side of that street from an iron stake at the side of a trench being opened in the middle of the street, to connect a house with a sewer, to a telegraph pole in the sidewalk. Writ dated June 6, 1903.

At the trial in the Superior Court before *Schofield*, J. the jury answered special questions, submitted to them by the judge, as

follows: "1. Was the plaintiff in the exercise of due care? Yes. 2. Was the automobile running at the time of the accident at a speed exceeding ten miles an hour? No." The jury returned a verdict for the plaintiff in the sum of $175; and the defendant alleged exceptions, raising the questions stated by the court.

*H. A. Dubuque,* for the defendant.

*A. S. Phillips,* for the plaintiff.

BARKER, J. This is an action brought under the provisions of R. L. c. 51, § 18, to recover compensation for personal injuries suffered in consequence of an alleged defect in Bedford Street. This street had been used for public travel for more than thirty years, and was constructed with a macadam driveway for vehicles and with sidewalks and curbs on either side. The plaintiff was riding on the right hand side of the driveway, in an automobile which ran into a rope stretched above the driveway across a portion of it extending from the curb to a point near the centre of the street, and fastened at one end to a pole in the sidewalk and at the other end to an iron bar driven into the macadam.

1. The first question raised is whether the street had been laid out in accordance with law. The records showed a layout of the street by a report of the mayor and aldermen, that the common convenience and necessity required that such a street should be laid out, accepted and approved by the board of aldermen on August 22, 1871; that the report was accepted in the common council on August 24, 1871, and that the board of aldermen on September 4, 1871, concurred with the council in accepting the report. The defendant's contention is that the street was not a public highway because the votes of the common council and of the board of aldermen were only to accept the report and not the layout mentioned therein. The case of *Draper* v. *Mayor of Fall River,* 185 Mass. 142, is relied upon by the defendant in support of this contention. There the question was whether a sewer system had been adopted by the city, and the report which had been accepted and referred to a committee was merely a report of an engineer employed by the city to devise a system of sewerage. The action of the city in accepting the report of a mere employee and in referring it to a committee

with authority to print the report in pamphlet form was not a laying out of the sewers comprised in the system, nor an adjudication that they were required by common convenience and necessity. In the present case the mayor and aldermen who reported the laying out of Bedford Street in 1871 were not acting as a committee but as a branch of the city government and were clothed with authority to take the first step in laying out public ways, by the making and filing of a report adjudicating that the way should be laid out. St. 1854, c. 257, § 14. The statutory phrase indicating the action to be taken by the inhabitants of a town, or by the legislative departments of a city government upon such a report in order to establish the way is " accepted and allowed." See Rev. Sts. c. 24, § 69 ; Gen. Sts. c. 43, § 65 ; Pub. Sts. c. 49, § 71 ; R. L. c. 48, § 71. The acceptance by one branch of a government of the action of another branch, when the effect of concurrence of action by both branches is to establish a new public work, indicates that the branch which accepts intends to allow the public work to be established. Accordingly a vote of the inhabitants of a town upon the report of its selectmen laying out a way, that the report be accepted, has been held to establish the way. *Harrington* v. *Harrington*, 1 Met. 404. We think the records concerning the laying out of Bedford Street showed its establishment as a public way for the care of which the defendant was responsible. See *Masonic Building Association* v. *Brownell*, 164 Mass. 306, 309.

2. The defendant requested an instruction that " the provisions of R. L. c. 51, § 1, do not apply to one driving an automobile, which is not a ' carriage,' within the meaning of that statute, but may be considered more like a ' machine.' " Upon the subject of this request the presiding judge said to the jury that he did not feel at liberty to instruct them that an automobile cannot be considered as a carriage, and that although the plaintiff was in one at the time still he was in the highway as a traveller in a mode of conveyance which, if the other elements of liability were established, would entitle him to recover.

Plainly an automobile is a vehicle which can carry passengers or inanimate matter, and so is such a carriage as the decision in *Richardson* v. *Danvers*, 176 Mass. 413, 414, said that the Legislature had in view in the use of that word in the statute. The

section referred to in the request deals with the state of repair in which ways are to be kept. In the present case the alleged defect was one which would be dangerous to ordinary vehicles. Therefore we now have no occasion to consider whether roads must be kept in such a state of repair and smoothness that an automobile can go over them with assured safety. It now has been settled that a traveller is not precluded from recovery under the statute by the fact that when the accident occurred he was riding upon a bicycle if the defect was one dangerous to ordinary travel. *Spring* v. *Williamstown*, 186 Mass. 479. The automobile is a vehicle in common use for transporting both persons and merchandise upon public ways, and its use is regulated by statute. Sts. 1902, c. 315; 1903, c. 473. We think that the plaintiff was not precluded from a recovery because of the nature of the vehicle in which he was riding, and that the instruction to that effect was right, and that the defendant was not harmed by the omission to charge in accordance with the request stated.

3. At the plaintiff's request the jury were instructed that in considering the question of due care they might have in mind the provisions of R. L. c. 54, § 1, commonly known as the law of the road. We are of opinion that there was no error in this instruction. Although as there was no other vehicle in the immediate vicinity, and the plaintiff might have turned to the left without disobeying the statute, it was plain that other vehicles might approach and that if so it would be the plaintiff's duty to keep to the right of the workmen who were plainly to be seen engaged in opening a trench near the middle of the carriage way. The defendant contended that the plaintiff was negligent in choosing the narrower opening to the right rather than the wider one to the left. Under these circumstances the statutory requirement that when persons meet each shall seasonably drive to the right of the middle of the travelled path properly could be taken into account upon the question of the plaintiff's due care in attempting to travel where he did, and upon the question whether there was a defect caused by negligence in obstructing the whole of one half of the travelled path. The instructions given did not in any way imply that for the plaintiff to have kept to the left would have been to violate the provision of the statute cited. See *Norris* v. *Saxton*, 158 Mass. 46.

4. We are of opinion that the questions whether the way was defective and whether the plaintiff was in the exercise of due care were for the jury. There was evidence tending to show that the rope was of a color not easily distinguishable and that no flag or other means of attracting attention to the presence of the rope was used. The plaintiff testified that he did not see the rope until within two or three feet of it, that he then tried to stop the machine but "it was no use," and that the speed was diminished when he struck the rope. The obstructions to travel were caused by the operations of persons who were acting under a permit issued by the proper officials of the city, and this evidence with that tending to show how long the obstructions had been in place and their nature and location and the general location and use of the street justified a finding that they were dangerous to travel and that the danger might have been avoided by reasonable care on the part of the defendant. While the evidence as to the speed of the plaintiff's vehicle was contradictory, there was evidence that he was proceeding slowly and carefully.

*Exceptions overruled.*