Rockingham, ?
Dec. 31, 1903. )

HENDRY v. NORTH HAMPTON.

Damages are recoverable for injuries resulting to a highway traveler from two causes combined,—the one being a defect for which the town is liable under the statute, and the other a condition for which no such responsibility is imposed.

A town is liable to a person injured while riding a bicycle along a public highway, by reason of an unrailed and dangerous embankment which renders the highway unsuitable for the ordinary travel thereon.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1903, of the superior court by *Young,* J.

1. The plaintiff's evidence tended to show that on the afternoon of May 7, 1900, while she was slowly riding a bicycle along a highway in the defendant town and exercising due care, she ran into a mud puddle, was thrown over a dangerous embankment which was not railed or guarded, and received the injuries for which she seeks to recover. The wheel track in which she was riding was about two feet from the edge of the embankment. The defendants seasonably moved for a nonsuit and the direction of a verdict in their favor, on the ground that the plaintiff was guilty of contributory negligence, and excepted to a denial of the motions.

The defendants excepted to the denial of requested instructions upon the question of contributory negligence, as follows: "No matter if the embankment complained of was dangerous and, to be suitable for the travel thereon, should have been protected by railing, still the plaintiff cannot recover from the town if her own fault or negligence contributed in any degree to cause the injury. The plaintiff cannot recover from the town if the damage she sustained was in the least degree caused by her own fault or negligence." The court, after defining and illustrating "ordinary care," instructed the jury as follows: "It is the duty of every person who is traveling upon the highway to use ordinary care to avoid being injured. When you are considering whether or not the plaintiff could have prevented the accident by the use of ordinary care, you may consider, with all the other evidence, the plaintiff's age and her experience in riding a wheel, and you may also consider whether you, if you had been in her place, could have avoided the accident. To decide this question, you will only have to ask yourselves whether the plaintiff could have avoided the accident by the use of ordinary care, including the use of her eyes. If she could that is the end of the case, and your verdict will be for the defendants."

2. The defendants contended that the plaintiff's injury was proximately caused by the hole in the road and not by the embankment; and they requested the following instruction, which was denied, subject to exception: "If the mud puddle or hole in the road was the proximate or prime moving cause of the accident, or the cause without which the accident would not have happened, the plaintiff cannot recover."

3. The defendants also requested the following instructions: "The defendant town was not obliged by law to keep its highway in suitable repair and condition so that persons on bicycles could ride safely over it, at the time of the injuries complained of by the plaintiff. A bicycle not being a carriage within the meaning of the statute giving travelers who are injured by reason of a dangerous embankment the right to recover against a town, the plaintiff cannot recover in this action, even though the embankment complained of was dangerous and required a railing in order to make it reasonably safe for the ordinary travel thereon." Upon this question the jury were instructed as follows: "A bicycle is not a carriage within the meaning of the statute giving travelers who are injured by reason of a dangerous embankment the right to recover against a town; but a person riding a wheel is a traveler within the meaning of that statute. If the town maintained this highway in such a condition that it was reasonably safe for the ordinary travel thereon, it has done its whole duty in this respect;

that is, if the road did not require a railing to make it safe for such travel, the town has done its whole duty." The defendants excepted to the foregoing instruction and to the refusal to give those requested.

*Emery, Simes & Corey,* for the plaintiff.

*Page & Bartlett,* for the defendants.

REMICK, J.   1. It is found by the superior court that there was evidence tending to prove that the plaintiff was in the exercise of due care. Furthermore, we have examined the evidence for ourselves, so far as it is made a part of the record, and are of the opinion that it warrants the finding of the superior court in this particular. The defendants' motions for a nonsuit and verdict, upon the ground that the plaintiff was not in the exercise of due care, were therefore properly overruled. The defendants' requests for instructions upon this point, so far as they embodied a correct statement of the law, were given in substance; and no error appears either in the instructions given or in the refusal of those requested.

2. The contention of the defendants, that because the hole in the road gave to the plaintiff the impetus which carried her over the unrailed and dangerous embankment, therefore the hole—not the unrailed embankment—was as a matter of law the cause of her injury, is best answered by the authorities, which are so conclusive against the defendants' contention, at least in this jurisdiction, that to enter upon a discussion of· the question would be a work of supererogation. *Littleton* v. *Richardson,* 32 N. H. 59, 63; *Stark* v. *Lancaster,* 57 N. H. 88; *Merrill* v. *Claremont,* 58 N. H. 468; *Ela* v. *Cable Co.,* 71 N. H. 1; *Templeton* v. *Montpelier,* 56 Vt. 328; Elliott R. & S., *s.* 617. According to the view contended for by the defendants, there could have been no recovery in *Norris* v. *Haverhill,* 65 N. H. 89,—163 Briefs & Cases 159, and *Seeton* v. *Dunbarton, ante, p.* 269. An able and instructive discussion of the question may be found in *Sherwood* v. *Hamilton,* 37 U. C. Q. B. 410, where the conflicting authorities are exhaustively reviewed and the New Hampshire rule adopted, as being in accordance with the weight of authority and the better reasoning. The instructions given upon this point were in accordance with the principles established by the authorities cited, and the instructions requested were properly denied.

3. The defendants' next and last contention is that section 1, chapter 59, Laws 1893, making " towns  .  .  .   liable for damages happening to any person, his team or carriage, traveling upon

a bridge, culvert, or sluiceway, or dangerous embankments and defective railings, upon any highway, by reason of any obstruction, defect, insufficiency, or want of repair of such bridge, culvert, or sluiceway, or dangerous embankments and defective railings, which renders it unsuitable for the travel thereon," imposes no duty upon towns to build and maintain suitable bridges, culverts, sluiceways, or railings for the protection of persons riding bicycles, and no liabilitiy for injuries happening to such persons from defects in these particulars.

Under a statute providing "that any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways . . . in reasonable repair and in condition reasonably safe and fit for travel," may recover just damages of the town in default, the supreme court of Michigan has held that a person injured while riding upon a bicycle, by reason of a condition of the highway unsuitable for that mode of travel but reasonably safe for travel in ordinary vehicles like wagons and carriages, cannot recover; that at the time the law was enacted bicycles were in use only to a limited extent, and the legislature did not intend to place upon townships and cities the burden of keeping their roads and streets in a safe condition for that kind of conveyance; that reasonable care in the construction and maintenance of highways for ordinary vehicles, such as wagons and carriages, is the measure of duty resting upon municipalities. Mich. Comp. Laws [1897], c. 91, s. 1; *Leslie* v. *Grand Rapids*, 120 Mich. 28.

Construing a statute of New York which provided that "every town shall be liable for all damages to person or property, sustained by reason of any defect in its highways or bridges," the court said: "It cannot be successfully claimed that a larger measure of duty on the part of commissioners of highways is due to bicycle riders than to persons traveling upon the road in ordinary vehicles. It is apparent that a bicycle rider upon an ordinary country road is exposed to greater dangers than a person riding in a wagon, and the great increase in the number of persons using these vehicles has created a demand for better and safer roads; but under the present highway laws, a road in a condition which is reasonably safe for general and ordinary travel is all that the commissioners of highways are bound to maintain." N. Y. R. S. (8th ed.), *p.* 3972, *s.* 16; *Sutphen* v. *North Hampstead*, 80 Hun 409, 411, 412.

In Massachusetts it is provided that "if a person receives or suffers bodily injury, or damage in his property, through a defect, or want of repair or of sufficient railing, . . . he may recover . . . the amount of damage sustained thereby." Construing this statute, the court said: "The statute . . . was passed

long before bicycles were invented, but although, of course, it is not to be confined to the same kind of vehicles then in use, we are of the opinion that it should be confined to vehicles *ejusdem generis,* and that it does not extend to bicycles. . . . A bicycle is of but little use in wet weather or on frozen ground. Its great value consists in the pneumatic tire; but this is easily punctured, and no one who uses a wheel thinks of taking a ride of any distance without having his kit of tools with him. A hard rut, a sharp stone, a bit of coal or glass, or a tack in the road, may cause the tire to be punctured, and this may cause the rider to fall and sustain an injury. It may impose an intolerable burden upon towns to hold them bound to keep their roads in such a state of repair and smoothness that a bicycle could go over them with assured safety." It was accordingly held that a road which is reasonably safe for ordinary travel is not defective merely because not fit for use by bicycles. Mass. P. S., *c.* 52, *s.* 18; *Richardson* v. *Danvers,* 176 Mass. 413; *Rust* v. *Essex,* 182 Mass. 313.

Of the soundness of these decisions and their applicability to our statute we need not inquire, for they fall far short of deciding that a bicycle rider injured by reason of a defect in the highway rendering it unsuitable for ordinary travel is without remedy, merely because when injured he was in the saddle of a bicycle instead of on a wagon seat, or a horse's back, or on his feet pushing a bicycle. In *Rust* v. *Essex,* the court assumed that if the highway could have been found defective for ordinary travel, the plaintiff "might have recovered for his injuries, notwithstanding the fact that he was riding upon a bicycle." The Michigan and New York cases convey the same idea.

The defect complained of in the present case was an unrailed and dangerous embankment. We must assume from the instructions of the court and the verdict of the jury that it rendered the highway unsuitable, not only for traveling by bicycle, but for ordinary travel as well. This being so, we see no reason why the fact that the plaintiff was on a bicycle, instead of on horseback or on foot pushing her bicycle, should preclude her recovery. Common sense rejects the distinction. The statute furnishes no warrant for it, either in letter or spirit. It says: "Towns are liable for damages happening to any person . . . traveling," etc., without any expressed limitation as to the mode of conveyance. "A traveler is one who travels in any way." To travel, is "to pass or make a journey from place to place, whether on foot, on horseback, or in any conveyance." Traveling is "the act of making a journey; change of place; passage." The word "traveling," as used in some penal statutes, may have a narrow meaning; but in order to maintain an action against a city or town for a defect in a high-

way, one need be a traveler only in the general sense above indicated. *Hardy* v. *Keene*, 52 N. H. 370, 377; *Hamilton* v. *Boston*, 14 Allen 475, 483; Black Law Dict. 1185; Cent. Dict., *tit.* Travel, Traveler, Traveling. It should also be observed that the bicycle is recognized by the public policy of New Hampshire as a legitimate method of traveling upon the highway, and that it is in common use for that purpose, with general consent. Laws 1897, *c.* 61, *s.* 1; *Ib., c.* 93.

Being a traveler upon the highway, both according to the literal meaning of that term and by the public policy of the state as clearly manifested by the legislation and general custom referred to, the plaintiff, notwithstanding she was riding on a bicycle, was entitled at least to a highway in condition suitable for ordinary travel, and to damages happening to her by reason of any unsuitableness of the highway for such travel. It follows that the instructions given upon this point were correct, and that those requested were properly denied.

The question discussed as to whether a bicycle is a carriage, within the meaning of the statute, seems quite immaterial to the present case, because the plaintiff claims nothing on account of damage to her wheel, and her right to recover for damage to her person is in no way dependent upon the means by which she was moving, so long as she was a traveler and in the exercise of due care. But if the question were material, and the instruction that a bicycle is not a carriage erroneous, the error was entirely in the defendants' favor and prejudicial to the plaintiff alone.

*Exceptions overruled.*

All concurred.