**Betty Jean REID, Appellant,**

v.

**NORTH RIVER INSURANCE COMPANY,**
**Appellee.**

**No. 6359.**

Court of Civil Appeals of Texas,
El Paso.

April 3, 1974.

A. R. Archer, Jr., Monahans, Max E. Ramsey, Odessa, for appellant.

Scott, Hulse, Marshall & Feuille, J. F. Hulse, Charles R. Jones, El Paso, for appellee.

OPINION

WARD, Justice.

This is a workmen's compensation case. The injury was the result of an automobile

accident and the problem presented lies in the area of the employer's control of the transportation and special mission exceptions to the "coming-and-going" rule regarding course of employment. The trial Court entered judgment for the insurance company based upon a jury finding that the injury was not sustained in the course of the employment. The employee complains that error was committed as the evidence conclusively established as a matter of law that she was in the course of her employment and that the jury finding was against the overwhelming weight of the evidence and was manifestly unfair and unjust. We affirm.

The Appellant, Betty Jean Reid, was employed by Photography Unlimited, Inc., a corporation with offices and studios in El Paso, Albuquerque, New Mexico, and Fort Gordon, Georgia. Her work required that she travel in the area outside of El Paso where she contacted various stores to arrange the taking of photographs. Most of her time was spent in traveling and she used her own automobile. Her salary was set at $500.00 per month and in addition she was paid the sum of $20.00 per day for food and lodging when she was out of town. She was furnished a credit card by which her employer paid the cost of gasoline, tires, and expenses of maintenance for the car. At the time of her injury, she had her home in El Paso but was undergoing a training period with the expectation that she would be moving to Albuquerque for a permanent assignment. On the day of her injury, which was a Saturday, she arrived in El Paso from one of her trips and went directly to the office of her employer. Mr. Walter Parker, the owner of all of the stock of the corporation, invited her to lunch and while they were eating he informed her that he wanted her to go to work for the company on a permanent basis at the Fort Gordon, Georgia, office and that she was to leave the following Monday. When they returned to the office, they worked until about 8:30 P.M., when he requested that she drive him to the Jest-

er's Club, a bar in El Paso, and he did not have a car at the time. Mr. Parker actually drove her car to the bar where they stayed until about 11:00 P.M. and where they had a few drinks. They then started to Mr. Parker's home but stopped at the El Morocco Club where they had a late supper. After eating, they continued with Mr. Parker still driving when the accident occurred. Mr. Parker lived some distance to the northwest of El Paso and for Mrs. Reid to take Mr. Parker from his office to his home and to return to her own home was a distance of some 55 to 60 miles.

The dispute in the evidence is presented when Mr. Parker testified that all business of Photography Unlimited, Inc. had been concluded when they left the company offices that night and they were merely enjoying a social evening together. He testified that he did request that the Appellant drive him to the Jester's Club to pay some money he owed the bartender but that when it came time to leave, it was the Appellant who offered to take him to his home. He stated that he preferred to stay downtown and shoot some pool rather than go home but did accept the Appellant's offer. He repeatedly denied that he directed or instructed her to drive him home and that after they left the office they never discussed company business. Appellant insists that it was Mr. Parker who suggested she take him home and that they could then discuss her proposed move to Georgia and that at the Jester's Club they discussed her move and business and continued to go over these matters until the time of the accident.

In connection with the course of employment issue, the trial Court charged the law of Section 1, Article 8309, Vernon's Tex. Rev.Civ.Stat.Ann., applicable to the issue raised under the testimony and did not charge under Section 1b. The following definition was used:

> " 'Injury in the course of employment' means any injury having to do with and originating in the work, business, trade

or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere. An employee who is temporarily directed or instructed by her employer to perform services outside of the usual course of trade, business, profession or occupation of her employer is in the course of her employment while performing services pursuant to such direction or instruction."

No objection was made in the trial Court nor is any point presented here as to the definition. See Travelers Insurance Company v. Mesta, 435 S.W.2d 228 (Tex.Civ. App.—San Antonio 1968; writ ref'd n. r. e. 438 S.W.2d 905).

■ The question of whether or not the Appellant was engaged in the course of her employment when she was injured is governed by the terms of Sections 1 and 1b of Article 8309, as the Courts have interpreted the statutes both before and after the enactment of Section 1b in 1957. 22 Sw.L.J. 841. Generally, an injury received by a workman while using the public streets and highways in returning from the place of employment after completing his day's employment is not compensable because it is not incurred in the course of employment as required by the definition in Section 1 of Article 8309. American General Insurance Company v. Coleman, 157 Tex. 377, 303 S.W.2d 370 (1957). The rationale of the rule is that injury incurred in such travel does not arise out of the employment but that the injury is suffered as a consequence of risks and hazards to which all members of the traveling public are subject. Exceptions to the general rule which may be applicable from the facts before us are found in the first part of Section 1b of Article 8309. The Appellant argues that here the transportation was under the control of the employer and the employee was directed in her employment to proceed from one place to another and thus perform a "special mission" for the employer. However, Section 1b does not provide that an employee shall be regarded as being in the course of her employment when any one of the specified conditions is satisfied. Not only must one or more of the exceptions be satisfied, it is still necessary for the employee to show (a) that the injuries were of a kind and character that had to do with and originated in the work, business, trade or profession of the employer and (b) were received while the employee was engaged in or about the furtherance of the affairs or business of the employer. Texas General Indemnity Company v. Bottom, 365 S.W.2d 350 (Tex. Sup.1963); United States Fidelity & Guaranty Company v. Harris, 489 S.W.2d 312 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.).

■ The jury in this case accepted the version of the dispute offered by Mr. Parker and considering his testimony, the visits to the two places of entertainment, the social drinking, and the lateness of the hour, we decline to say that as a matter of law the injury occurred in the course of the employment. The trip was not being made for any purpose related to the employment. According to the version accepted by the jury, the employee was engaged in a purely personal mission of pleasure which was in no way incident to her employment. Walker v. Texas Employers' Insurance Association, 443 S.W.2d 429 (Tex.Civ.App.—Fort Worth 1969, writ ref'd). Also, having examined all of the evidence and the argument offered by the Appellant under her last point, we conclude that the finding was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The judgment of the trial Court is affirmed.