Opinion filed June 25, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00323-CV

_____

## TERESA D. DARLING AND LOCHIE HOSCH A/N/F OF KELLIE J. DARLING, Appellants

## V.

## OLD REPUBLIC INSURANCE COMPANY, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 56375**

## M E M O R A N D U M   O P I N I O N

An instrumentation and electrical technician was killed in a motor vehicle accident while driving home from work and Appellants, Teresa D. Darling and Lochie Hosch as next friend of Kellie J. Darling, sought workers' compensation death benefits as decedent's beneficiaries. This is an appeal from the trial court's

order granting summary judgment in favor of Appellee, Old Republic Insurance Company. In two issues, Appellants argue that the trial court erred in granting Appellee's motion for summary judgment and that they are beneficiaries entitled to death benefits under the Texas Workers' Compensation Act (the Act). We affirm the trial court's judgment.

## I. *Factual and Procedural History*

The following facts are not in dispute. James E. Darling, an instrumentation and electrical (I&E) technician employed by Energy Transfer LP, was killed in a motor vehicle accident on April 25, 2019. At the time of his death, he was driving home in an employer-owned vehicle from the plant where he worked. After his death, Appellants sought death benefits from Energy Transfer LP's workers' compensation insurance carrier, Appellee. Appellee maintained that Appellants were not entitled to death benefits because James was not acting in the course and scope of his employment at the time of the accident. Appellants then initiated an administrative proceeding with the Texas Department of Insurance, Division of Workers' Compensation (TDI-DWC) to recover compensation benefits. The parties participated in a contested case hearing, and the administrative law judge (ALJ) determined that James was not acting in the course and scope of his employment and that Appellants were not death beneficiaries under the Act because no death benefits were payable. *See* TEX. LAB. CODE ANN. § 410.151 (West 2015). A three-member appeals panel affirmed the ALJ's decision. *See id.* § 410.204 (West Supp. 2025).

Appellants subsequently sought judicial review by filing their original petition in the district court seeking to overturn the administrative decision. *See id.* §§ 410.301, 410.252. Appellants specifically challenged the following finding of fact and conclusions of law:

| Finding of Fact #3 | The deceased was not in the course and scope of his employment when he was involved in the motor vehicle accident on April 25, 2019. |
|---|---|
| Conclusion of Law #3 | James E. Darling, deceased was not in the course and scope of his employment when involved in a motor vehicle accident on April 25, 2019. |
| Conclusion of Law #4 | Teresa D. Darling and Kelli J. Darling are not proper legal beneficiaries of the deceased, James E. Darling and are not entitled to death benefits because not [sic] death benefits are payable. |

After filing an original answer, Appellee filed a motion for summary judgment on the issue of whether James was acting in the course and scope of his employment at the time of the accident. Appellee argued that James had not been within the course and scope of employment because his commute did not originate in his employment. Appellee attached the following exhibits to its motion:

1. A certified transcript from the contested case hearing;

2. A text message from James to Teresa, which was date stamped April 25, 2019, at 8:38 p.m., stating: "I'm on m [sic] my way home!!";

3. Two separate DWC042 forms submitted by Teresa to the TDI-DWC;

4. The Texas Peace Officer's Crash Report from April 25, 2019;

5. A certified copy of the ALJ's decision; and

6. A certified copy of the TDI-DWC's notice of decision and rights of appeal.

The transcript from the contested case hearing contained testimony from two witnesses, Teresa, and decedent's co-worker, Clinton Derek New. We summarize their testimony in relevant part below.

New, an I&E technician, testified that he and James worked at the Rebel Plant, a gas processing plant owned by Energy Transfer LP, located between Midland and

3

Garden City. They were issued company vehicles, and New testified that he stored his work tools in his company vehicle.[1] The company paid for gas and maintenance. On the morning of April 25, 2019, New and James arrived "at or around" 7:00 a.m. to begin their workday, which ordinarily ended at 3:30 p.m. However, equipment outages necessitated that they work overtime that day, and James exchanged goodbyes with New "at about 8:00 [p.m.]." New then received a text message from James ten minutes later, notifying him that James had stayed to check on an air compressor that New had worked on earlier in the day. New texted James when he got home at 8:48 p.m. but never received a response. New testified that although they were provided company vehicles, they were allowed to take them home after work, and they were only paid for traveling to and from the plant during "call-out[s]." New explained that a "call-out" occurs when an employee, not scheduled for work, is asked to work. I&E technicians were "on-call" for call outs on a "rotating schedule." New could not recall whether James was on call the week of his death. To New's knowledge, neither he nor James "were in a call-out situation."

Teresa testified that she believed that James had been "on-call" three weeks in a row and had responded to at least one prior callout earlier that week, however, she conceded that she had previously—and truthfully—testified that she did not really know whether James was on call. Teresa agreed that James had not been on a "call-out" at the time of his death. Teresa stated that James had sent her a text message, notifying her that he was on his way home shortly before the accident, which occurred about twelve miles from their home.

In response to Appellee's motion for summary judgment, Appellants argued that James had been in the course and scope of employment at the time of his death

---

[1]While the location of tools is not determinative, there was no testimony regarding the tools of the decedent.

as evidenced by (1) James's utilization of the company vehicle, which was monitored via a GPS,[2] and (2) testimony that James would get "callouts" after work hours and he had received a callout at least once in the week leading up to his passing. Appellants argued that the "coming and going" exclusion exception applied. Appellants attached excerpts of Energy Transfer LP's Employee Handbook as an exhibit.

The trial court granted Appellee's motion for summary judgment and dismissed Appellants' claims. This appeal followed.

## II. *Standard of Review*

We review de novo the trial court's ruling on a motion for summary judgment. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citing *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)); *City of Stephenville v. Belew*, 692 S.W.3d 347, 360 (Tex. App.—Eastland 2024, pet. denied). When doing so, "[w]e review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007).

---

[2]Energy Transfer LP's employee handbook states: "THE COMPANY MAY: INSTALL A FLEET MANAGEMENT DEVICE (GPS) IN ANY COMPANY OWNED VEHICLE." There was no evidence presented confirming the presence of a GPS device in James's company vehicle.

For a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c)[3]; *Eagle Oil & Gas Co.*, 619 S.W.3d at 705. To meet this burden, when the defendant is the movant, it must conclusively negate at least one essential element of each of the plaintiff's claims or conclusively prove all elements of an affirmative defense. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96–97 (Tex. 2016); *see* TEX. R. CIV. P. 166a(b), (c).

## III. *Applicable Law*

Under the Act, an employee is generally eligible for compensation benefits "without regard to fault or negligence" if "the employee is subject to" the Act at the time of injury and "the injury arises out of and in the course and scope of employment." LAB. §§ 406.031(a) (Liability for Compensation), .032 (Exceptions); *Univ. of Tex. Rio Grande Valley v. Oteka*, 715 S.W.3d 734, 740 (Tex. 2025). "Course and scope of employment" is a necessary component of a compensation claim and is statutorily defined as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." LAB. § 401.011(12); *see Riggs v. Old Republic Ins. Co.*, No. 11-18-00276-CV, 2020 WL 5848906, at *2 (Tex. App.—Eastland Oct. 1, 2020, no pet.) (mem. op.). To be clear, "course and scope of employment" requires a showing that the injury "(1) relate[s] to or originates in, and (2) occur[s] in the furtherance of, the employer's business." *SeaBright Ins. Co. v. Lopez*, 465

---

[3]We note that the Texas Supreme Court has recently revised Rule 166a. Although the "rewrite is not intended to substantively change the law," it has resulted in a renumbering of the provisions of the rule. *See* Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The amendments to this rule only apply to motions for summary judgment filed on or after March 1, 2026. Because Appellee's motion for summary judgment was filed prior to that date, we refer to the rule in effect at the time the motion was filed. *See id.*

S.W.3d 637, 642 (Tex. 2015) (quoting *Leordeanu v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 241 (Tex. 2010)).

However, "[e]ven if an employee is engaged in actions that originate in and further the employer's business at the time of injury, the employee may not be acting in the course and scope of his employment if his actions fall in one of two statutory exclusions." *Id.* at 645. The phrase "course and scope of employment" does not include

> (A) transportation to and from the place of employment unless:
>
>> (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
>>
>> (ii) the means of the transportation are under the control of the employer; or
>>
>> (iii) the employee is directed in the employee's employment to proceed from one place to another place; or
>
> (B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:
>
>> (i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and
>>
>> (ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

LAB. § 401.011(12)(A)–(B).

Put simply, "Subsections (A) and (B) are exclusions, each followed by exceptions." *Leordeanu*, 330 S.W.3d at 244. If any of the disjunctive exceptions are met under subsection (A), the exclusion does not apply and "travel to and from work is not excluded from the course and scope of employment." *Id.* Subsection (A) is commonly referred to as the "coming-and-going" rule. *Orozco v. Cnty. of El Paso*, 602 S.W.3d 389, 397 (Tex. 2020). "The coming-and-going rule reflects that

an accident while traveling to and from work does not generally arise from a person's employment but instead from the risks and hazards inherent to the driving public." *City of Houston v. Gutierrez*, No. 14-24-00811-CV, 2025 WL 3523082, at *3 (Tex. App.—Houston [14th Dist.] Dec. 9, 2025, no pet.) (mem. op.) (first citing *Smith v. Tex. Emp'rs' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. [Comm'n Op.] 1937); and then citing *Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 376 (Tex. 2022)).

"Subsection (B) is somewhat convoluted." *Leordeanu*, 330 S.W.3d at 244. "Subsection (B) has two, conjunctive exceptions and applies unless both are met." *Id.* Subsection (B) is referred to as the "dual-purpose travel" rule, *Orozco*, 602 S.W.3d at 396, and provides that travel encompassing both business and personal purposes "is in the course and scope of employment only if the business purpose is both a necessary and sufficient cause for the travel." *Leordeanu*, 330 S.W.3d at 243. The dual-purpose rule and coming-and-going rule are mutually exclusive and distinct. *Orozco*, 602 S.W.3d at 397; *see Leordeanu*, 330 S.W.3d at 248–49.

While the TDI-DWC has exclusive jurisdiction to determine a claimant's entitlement to benefits, the Act provides for a modified de novo judicial review of a final TDI-DWC decision involving compensability or eligibility for death benefits. *Oteka*, 715 S.W.3d at 736, 742 n.38; *see* LAB. § 410.251. The party appealing the compensability decision has the burden of proof by a preponderance of the evidence. LAB. § 410.303. Additionally, the Act limits judicial review to "issues decided by the [TDI-DWC]." *Id.* § 410.302(b).

IV. *Analysis*

The first issue before us is whether James was acting in the course and scope of his employment at the time of his death. *See id.* §§ 401.011(10), (12); 410.302(b); *see also SeaBright*, 465 S.W.3d at 642. Appellants argue that James was only traveling home as a result of working overtime, and his travel falls outside of the "coming-and-going" exclusion because James's employer provided the means of

8

transportation and "exerted control over [James's] use of the transportation at the time of his death." Appellee argues that we do not reach the analysis regarding the applicability of either of the exclusions under subsections (A) or (B) because, as a matter of law, James's travel from work to home does not relate to or originate in the employer's business. *See SeaBright*, 465 S.W.3d at 642.

We turn to the first element—origination—and we employ a fact-intensive analysis to determine whether James's travel originated in Energy Transfer LP's business, focusing on the nature of James's job, the circumstances of the travel, and any other relevant facts. *SeaBright*, 465 S.W.3d at 642–43. "No singular fact is necessarily dispositive." *Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 730 (Tex. App.–Austin 2011, pet. denied); *see SeaBright*, 465 S.W.3d at 642–43. As noted above, most of the relevant facts are undisputed here. Energy Transfer LP owned the gas processing plant, the Rebel Plant, where James worked as an I&E technician. The Rebel Plant consisted of two separate plants located within a 100-acre fenced property. James was one of three I&E technicians responsible for repairing, maintaining, and troubleshooting control systems used to operate either a gas plant or compressor equipment. I&E technicians utilized a laundry list of tools as part of their employment and kept the tools stored in their company vehicles. Given the impracticability of walking between facilities, I&E technicians typically drove company vehicles. They were also permitted to drive company vehicles home but were only paid for traveling to and from the plant during "call-out[s]." Gas and maintenance were paid for by the company. At the time of the accident, however, James was driving home from work and had not been responding to a "call-out."

Appellants argue that the facts in this case are similar to those before the Texas Supreme Court in *Leordeanu*, *SeaBright*, and *Orozco*. *See Orozco*, 602 S.W.3d at 398; *SeaBright*, 465 S.W.3d at 645; *Leordeanu*, 330 S.W.3d at 240. All three supreme court cases address whether an employee is acting in the "course and scope

9

of employment" during work-related travel at the time of their injury or death. *Orozco*, 602 S.W.3d at 398; *SeaBright*, 465 S.W.3d at 645; *Leordeanu*, 330 S.W.3d at 240. In each case, the court concluded that the employee's travel satisfied both elements and applicable exceptions defeated any exclusion from coverage. *Orozco*, 602 S.W.3d at 390; *SeaBright*, 465 S.W.3d at 639–40; *Leordeanu*, 330 S.W.3d at 249. As explained below, Appellants' reliance on these cases is misplaced.

The employee in *Leordeanu* was a pharmaceutical sales representative officing out of her apartment. *Leordeanu*, 330 S.W.3d at 240. She was seriously injured while driving a company car from a dinner with clients to a company-provided storage unit located near her apartment. *Id.* at 240–41. The court found the origination element of the statute had been satisfied because she was "on her way from an employer-sponsored dinner to an employer-provided storage facility to empty her company car of business supplies." *Id.* at 249.

Like *Leordeanu*, the employee in *SeaBright*, Lopez, was involved in a collision on his way to a temporary job site in his company vehicle. *SeaBright*, 465 S.W.3d at 644. The court reasoned that several undisputed facts conclusively showed that Lopez established the origination element, including: (1) Lopez was traveling only to his place of employment, rather than furthering any of his personal or private affairs; and (2) Lopez's employer had provided Lopez with a company vehicle to drive to and from the temporary job site as it was in a remote location and paid the vehicle's fuel and insurance expenses. *Id.*

Finally, in *Orozco*, the court examined whether a police sergeant's use of his patrol car for travel from an approved employment location to his home when an accident occurred constituted "course and scope of employment." 602 S.W.3d at 393. The court concluded that it did because per department policy, use of the patrol car was *only* for "official business," and Sergeant Orozco was required to inform dispatch of his arrival home to advise that he and the vehicle were no longer in

service. *Id.* at 395, 397. The court reasoned, "Orozco may not have been on duty at the time of the accident, at least in the sense that the county was paying for his time, but the county was paying for Orozco's patrol car and directing its use." *Id.* at 395.

Unlike the facts in *Leordeanu* or *SeaBright*, James was not driving in furtherance of a work obligation or driving to a place of employment or work-related location; he was commuting directly home—unpaid—having concluded his day at work. *See Am. Cas. Co. of Reading, Pa. v. Bushman*, 480 S.W.3d 667, 674 (Tex. App.—San Antonio 2015, no pet.) ("Evidence that an employee was on a 'special mission' for his employer is . . . probative of whether an employee's trip originated in his employer's business." (quoting *McVey*, 339 S.W.3d at 730)); *cf. SeaBright*, 465 S.W.3d at 644; *Leordeanu*, 330 S.W.3d at 249. Although James's circumstances share similarities with those of the employee in *Orozco*, there is no evidence that James's use of his company vehicle was dictated by his employer that evening. *Cf. Orozco*, 602 S.W.3d at 395.

"The mere furnishing of transportation by an employer does not automatically bring the employee within the protection of the Texas Workers' Compensation Act." *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 630–31 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd) (quoting *Wausau Underwriters Ins. Co. v. Potter*, 807 S.W.2d 419, 422 (Tex. App.—Beaumont 1991, writ denied)). "If this were not the law in this State, then each and every accident in a company vehicle, including those operated for purely personal reasons, would be compensable under the Texas Workers' Compensation Act." *Id.* The same is true regarding the general presence of work tools in employees' work vehicles, in that, there remains an absence of evidence that James's travel home that evening was pursuant to a condition of his employment. *See Bushman*, 480 S.W.3d at 674 ("The origination element is satisfied when the employee's travel was pursuant to an express or implied condition of the employee's contract."); *see, e.g., Painter v. Amerimex Drilling I, Ltd.*, 632

11

S.W.3d 156, 166 (Tex. App.—El Paso 2021, no pet.) (concluding that evidence was insufficient to demonstrate as a matter of law that employees were acting in the course and scope of their employment where evidence indicated that the "collision occurred while they were traveling as passengers, off duty, out of hours, off the jobsite, and on the way to a fixed housing location after the completion of their workday," even though employees were being transported by a fellow employee paid to make his personal vehicle available); *cf. Jerrols*, 385 S.W.3d at 631 (finding evidence of origination in an accident involving a company vehicle driven by an employee headed to lunch where there was testimony that employees were not free to use their personal vehicles to go to lunch). Moreover, we have found no authority that would permit Appellants to create a fact question based on information that James, though not on a call out at the time of his collision, was available for and *could have* later been subject to a call out.

The ultimate inquiry under the origination element is to determine if the relationship between James's travel and his employment "is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer." *SeaBright*, 465 S.W.3d at 642. Although James's employer provided him transportation, "the employer's [mere] gratuitous furnishing or paying transportation as an accommodation to the worker and not as an integral part of the employment contract . . . does not by itself render compensable an injury occurring during such transportation." *McVey*, 339 S.W.3d at 730 (quoting *Rose v. Odiorne*, 795 S.W.2d 210, 214 (Tex. App.—Austin 1990, writ denied)). Moreover, James's travel home from his place of employment does not appear to be "akin to those 'employees such as deliverymen, messengers, collectors, and others, who by the very nature of the work they have contracted to do are subjected to the perils and hazards of the streets.'" *SeaBright*, 465 S.W.3d at 644 (quoting *Smith v. Tex. Emp'rs' Ins. Ass'n*, 105 S.W.2d 192, 193 (Tex. [Comm'n Op.] 1937)). To the

contrary, James was simply commuting to his home, unpaid and uncontrolled by his employer, after a long workday. *See McVey*, 339 S.W.3d at 730; *cf. Hart v. N.H. Ins. Co.*, No. 12-24-00013-CV, 2024 WL 4906772, at *6 (Tex. App.—Tyler Nov. 27, 2024, pet. denied) (mem. op.) (concluding that there was a genuine issue of material fact regarding origination where evidence failed to conclusively establish that Hart was unpaid for his time while traveling home in his company vehicle).

We conclude that Appellee conclusively established that James's travel home did not originate in his employer's business, and Appellants did not raise a genuine issue of material fact as to the issue. Thus, the first element of the course-and-scope inquiry was not met, and the trial court did not err in granting summary judgment in favor of Appellee on that basis. *See SeaBright*, 465 S.W.3d at 642. We need not consider the remaining steps in the analysis—i.e., whether James acted in furtherance of his employer's business, whether one of the two exclusions of Section 401.011(12) applies, or whether an exception to the exclusion applies under Section 401.011(12)(A) or (B). *See* LAB. § 401.011; *Pinkus v. Hartford Cas. Ins. Co.*, 487 S.W.3d 616, 625 (Tex. App.—Dallas 2015, pet. denied). We overrule Appellants' first issue.

In their second issue, raised "out of an abundance of caution," Appellants request that we determine whether they "are beneficiaries for purposes of death benefits under the [statute]." However, because Appellee did not move for summary judgment on Appellants' beneficiary status, this issue is outside the scope of the summary judgment appeal, as Appellants concede. We consider only the grounds that the movant actually presented to the trial court in its motion. *Motloch v. Albuquerque Tortilla Co., Inc.*, 454 S.W.3d 30, 33 (Tex. App.—Eastland 2014, no pet.) (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex. 1996)); *see Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) ("On an

appeal from summary judgment, we cannot consider issues that the movant did not present to the trial court."). Appellants' second issue is overruled.

<h2 style="text-align:center">V. <em>This Court's Ruling</em></h2>

Accordingly, we affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

June 25, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.